### ROBERSON et al. v. DRANEY et al.

No. 3223.   Decided Dec. 17, 1918. On Application for Rehearing, Jan. 15, 1919.   (178 Pac. 35.)

1. CORPORATIONS—WRONGFUL ISSUANCE OF STOCK—RIGHT OF ACTION. Where it is claimed that shares of stock were improperly issued to promoters, the test is whether the corporation or any stockholder has suffered a tangible wrong or injury to his property rights, and not whether the stockholders suing acquired their stock before or after the wrongful acts complained of, provided they be not mere interlopers and are acting in good faith. (Page 271.)

2. CORPORATIONS—STOCK ISSUED TO PROMOTERS—LIABILITY. Where
an entryman on public coal lands, being unable to pay the price re-
quired by the government, induced three others to organize a cor-
poration, to which it was proposed to transfer the entries in return
for stock, and the several parties agreed as to the proportions in
which the stock was to be distributed, *held* that other stockholders
cannot recover from the three promoters, where the transaction re-
sulted in a profit to the corporation, and its stock was worth at
least par by reason of the lands conveyed; it being immaterial that
such promoters reaped greater profits than other purchasers of
shares.   (Page 271.)

On Application for Rehearing.

3. CORPORATIONS—STOCKHOLDER'S ACTION—ATTORNEY'S FEE. In an
action by some of the shareholders in a corporation to secure the
cancellation of stock issued to the promoters, *held* that, though such
stockholders were successful, it was improper to award attorney's
fees against the corporation.   (Page 280.)

Appeal from the District Court of Weber County, Second
District; *Hon. A. E. Pratt,* Judge.

Action by C. F. Roberson and others against William H.
Draney and others.

Judgment for plaintiffs.   Defendants appeal.

REVERSED and remanded.

*C. R. Hollingsworth* and *H. H. Henderson* for appellants.

*John G. Willis* for respondents.

FRICK, C. J.

The plaintiffs C. F. Roberson, Margaret Kay, Louis K. Brit-
ton, Joseph Ballantyne, Joseph Williams, L. B. Young, Joseph
F. Storey, Bredgey Sammon, David F. Davis, and Lincoln
Lumber Company, a corporation, as stockholders of the Lin-
coln-Kemmerer Coal Company, brought this action for the
benefit of themselves and for the benefit of other stockholders,
against said last-named company and against William H.

Draney, Charles H. Gosling, and T. D. Ryan, individually
and as officers and directors of such company, and against F.
Julius Anderson, for an accounting, to have a receiver ap-
pointed to take charge of the affairs of said company, and to
require each one of said Anderson, Draney, Gosling, and
Ryan to surrender for cancellation, and to have canceled, cer-
tain stock certificates issued to them by said company—each
one of said Draney, Gosling, and Ryan to surrender 300
shares, and said Anderson to surrender 600 shares, making
1,500 shares in all—and for general relief. In view, how-
ever, that no relief was obtained against said Anderson, and
since nothing is claimed against him on this appeal, he, here-
inafter, will be considered only to the extent that he was a
party to and connected with the transactions material to this
controversy.

The pleadings are necessarily long, and, in view that the
questions to be decided can be stated without specifically set-
ting forth the issues therein contained, we shall not refer to
them further.

The evidence is also very voluminous, but, for the reason
that ultimately there was only one question considered and
determined by the trial court, not all of what was presented
to that court is material on this appeal.

After the close of plaintiffs' case the trial court eliminated
everything except two questions, which, stating them in its
own language, are as follows:

"My view of the matter is this: That the only issues in this
case are with respect to the increase of the capitalization and
with respect to the issuance of the 1,500 shares of stock; in
other words, whether or not I ought to require that stock to be
returned, or whether or not I ought to declare the amend-
ment, by which the capitalization of the company was in-
creased, void. Those are the only issues in this case."

After the evidence was all in, the court, in summing up the
same, however, eliminated the question with respect to the
"increase of the capitalization" mentioned in its statement
we have quoted, and hence determined the single question
whether the 1,500 shares of stock issued to Draney, Gosling,
Ryan, and Anderson should be canceled. The court arrived

at the conclusion that only 900 shares of that amount were improperly issued, and hence should be. canceled, namely, that the 300 shares issued to Draney and a like number of shares issued to Gosling, and a like number issued to Ryan, should be canceled, and that the 600 shares issued to Anderson were properly issued and should not be canceled.

We have made this preliminary statement in the hope of affording the reader a better understanding of the controlling facts, which, briefly stated, are as follows:

In the spring of 1914 the defendant F. Julius Anderson, hereinafter called Anderson, was interested in certain coal entries or locations on government coal lands lying in the state of Wyoming. Anderson had made several entries or locations under the federal laws relating to coal lands. The time to purchase being about to expire, on at least some of the entries, he induced his brother John. Anderson and one Dr. F. A. Edlen, to relocate some of the claims, and in that way to obtain additional time within which to make payment to the government for the coal lands. Anderson had expended considerable labor and some money in making the developments on the coal lands, and had incurred other obligations for labor, etc., but he did not have the necessary money to pay therefor, and unless payment was made within the time required by law the coal entries would lapse, and he would forfeit all of his rights thereto. In order to avoid such a result, Anderson sought some person or persons with sufficient means to pay the government price for the lands, or to form a corporation to take them over and to develop them into a mine, and to work the same. With that end in view he was introduced to the defendant Ryan, who, in turn, introduced him to the other two defendants, Gosling and Draney, all of whom lived in Ogden, Utah. The three last named talked the matter over with Anderson, and they went to Wyoming to inspect the coal entries. After doing so, on the 2d day of May, 1914, Anderson, Draney, Gosling, and Ryan entered into an agreement in writing, whereby it was, in substance, agreed that the three last named would promote a corporation to take over the coal lands in Wyoming; that upon the organization of the corporation there should be is-

sued to said Anderson $150,000 worth of the capital stock of
said corporation, of which amount the three, Draney, Gosling,
and Ryan, agreed to purchase, "for the sum of one dollar
and other good and valuable consideration," $90,000 worth
of the stock.   It is clear from the evidence and from what
subsequently took place that the foregoing agreement did not
contain all of the provisions agreed upon by Anderson,
Draney, Gosling, and Ryan.   For example, it was agreed that
the corporation should be capitalized for $250,000, to be di-
vided into 2,500 shares of the par value of $100 each, yet the
writing was silent with respect to that.   The evidence also
shows that the plaintiff Margaret Kay was interested in hav-
ing the corporation formed, and that she rendered Anderson
some assistance in interesting Draney, Gosling, and Ryan in
the enterprise and in disposing of some of the corporate stock
to others, for which Anderson compensated her in giving her
10 shares of the capital stock, and for which services she was
otherwise compensated, as hereinafter indicated.   She was,
however, not a party to the agreement between Anderson and
Draney, Gosling, and Ryan.   Mrs. Kay was, however, one of
the original incorporators.   On the 29th day of August, 1914,
and pursuant to the foregoing agreement, articles of in-
corporation were adopted, signed, and on the 1st day of
September following, duly filed.   The incorporators were
Draney, Gosling, Ryan, Anderson, and Mrs. Kay.   Each one
of the four first named subscribed for 22 shares of the capital
stock of the par value of $2,200, while Margaret Kay sub-
scribed for 25 shares of the par value of $2,500, making in
all 113 shares of the par value of $11,300.   The capital stock
was, however, limited in the articles of corporation to $50,000,
divided into 500 shares of the par value of $100 each.   As
before stated, however, the agreement and understanding be-
tween Anderson and Draney, Gosling, and Ryan was that the
corporation should be capitalized at $250,000.   The reason
why that agreement was not fulfilled at the time is, however,
clearly explained by Mr. Ryan who testified:

"We were incorporated for $50,000, and afterwards in-
creased the stock to $250,000.   Our idea was to incorporate
for $250,000, but we ascertained that we didn't have suffi-

cient money to pay in the 10 per cent. of the capitalization, so we organized for $50,000, with the intention of amending the articles as soon as possible thereafter, which we did on September 5th, at a stockholders' meeting held at the offices of Mr. Hollingsworth.''

The evidence is conclusive on that point. The stockholders' meeting was held as stated by Mr. Ryan, and the articles were accordingly amended, and the capital stock was increased from $50,000, divided into 500 shares, to $250,000, divided into 2,500 shares of the par value of $100 each. While there was considerable dispute at the trial with respect to whether all of the stockholders were present at the foregoing meeting, the evidence leaves no room for even a reasonable doubt that all were present and consented to what was done. There was also much controversy at the hearing, and counsel still disagree, with respect to who were the stockholders at the time the meeting aforesaid was held. The trial court, however, found and held, and we think correctly so, that there were then no other stockholders except the five incorporators, and that they all participated in the meeting. The evidence giving rise to the controversy just referred to is to the effect that several of the plaintiffs had, in advance, agreed to purchase stock when the corporation should be organized, and, in order to secure funds to pay the government price for the coal lands, had advanced money for that purpose. By resolutions duly adopted after the corporation was organized the money advanced by those persons and that paid by the incorporators was duly credited to each one, and stock was issued to those who had agreed to purchase stock in case a corporation was incorporated at the rate of three dollars in stock for every one dollar paid by them, while to the incorporators, except Margaret Kay, stock was issued for the amount subscribed by each. The parties who had agreed to purchase stock, however, and who were not incorporators, were not recognized as stockholders nor considered as such by any one until after the corporation was organized and stock was issued to them, and the court held that they were not stockholders until then. After the corporation was organized resolutions were duly passed, authorizing the issuance of 1,500 shares of the capital stock

of said company to the Dr. F. A. Edlen before mentioned to pay for the coal lands located in his name, as hereinbefore stated upon his conveying to the corporation said coal lands. The doctor conveyed said coal lands to the corporation, and a certificate for 1,500 shares was duly issued to him, but by an understanding between Anderson and Draney, Gosling, and Ryan the certificate was not delivered to Edlen, but the stock was apportioned as follows: 600 shares to Anderson and 300 shares each to Draney, Gosling, and Ryan. Anderson, however, apportioned the 600 shares by transferring to Dr. Edlen what, as between them, it was agreed was his just proportion; and Anderson also transferred some of the stock to others, which, however, is not material here. The agreements to purchase stock were also approved at the stockholders' meeting aforesaid, and stock was ordered issued accordingly. To Draney, Gosling, Ryan, Anderson, and Mrs. Kay, the incorporators, stock was issued in the amounts each had subscribed for in the articles of incorporation. In addition to that there was also authorized to be issued to Ryan a certificate for additional stock purchased by him amounting to $1,300, and to Ryan amounting to $900, making a total of $3,500, which had been paid and for which stock was issued up to that time. There was also authorized to be issued to Margaret Kay fifty shares in addition to the twenty-five shares which she had subscribed for in the articles of incorporation, which gave her three shares for each one paid for as agreed upon. The same proportion was also ordered to be issued to the others who had agreed to take stock in the company when organized. The evidence thus shows that all those who had agreed to take stock in the company upon its organization received three shares for every one paid for by them, and that the 1,500 shares that were issued to Dr. Edlen for the additional lands which were by him conveyed to the company, but which in fact belonged to Anderson, were divided among Anderson, Draney, Gosling, and Ryan, Anderson receiving 600 shares while the other three received 300 shares each, as before stated. The evidence further shows that all those who agreed to purchase stock before incorporation obtained three shares of stock for each one paid for by them, while at least some of

those who purchased stock thereafter received only two shares for each one paid for. It was also made to appear that, although Anderson is one of the incorporators and had subscribed for twenty-two shares of stock, yet he did not pay therefor, and the same was issued to the person who did pay for it, and that all of the stock issued to Anderson was paid for by the conveyance of the coal lands to the company. The evidence was also conclusive that there was neither fraud, concealment, deception, nor misrepresentation on the part of either Draney, Gosling, or Ryan; that the coal lands conveyed to the company were worth all that the company paid therefore, and that the capital stock of the company is worth at least $100 a share; that Draney, Gosling, and Ryan organized the corporation, obtained credit for it, and whatever success has been attained is very largely, if not entirely, due to their efforts, and they have not, nor has either of them, received any property or anything of value for which they did not pay in full, except the 300 shares of stock that was issued to them as hereinbefore stated.

In view of the foregoing facts they contend that the 300 shares that were issued to each of them represented the $90,000 worth of stock mentioned in the original agreement between them and Anderson, and that the 600 shares issued to the latter represented the $60,000 worth of stock which by that agreement was to be held by Anderson. Upon the other hand, the plaintiffs contend that neither Anderson, Draney, Gosling, nor Ryan paid any consideration whatever for said 1,500 shares of stock; that the company received nothing therefor, and that it was wrongfully issued to them. The court, however, found and held that, in view that Anderson owned the coal lands which were conveyed to the company by Dr. Edlen, there was good consideration for the 600 shares issued to Anderson, and that those shares are valid and should not be canceled, but it also held and found that the 900 shares issued to Draney, Gosling, and Ryan, although based upon the same consideration, were nevertheless, issued without consideration, and hence should be canceled.

The record also shows that at the time of the trial the total number of shares that had been issued by the company was

2,165, of which number the plaintiffs owned 351; Draney, including the 300 shares, owned 336 shares; Gosling, including the 300 shares, owned 446 shares; and Ryan, including the 300 shares, owned 386 shares. The balance of the 2,165 outstanding shares, amounting to 646 shares, are owned by various other persons, including Anderson.

The findings of fact are very voluminous, and contain much evidentiary matter not essential to the findings of fact. In view, however, that the evidence which must control this decision is practically without conflict, no purpose could be subserved in setting forth the findings nor in making specific reference thereto, and hence we shall refrain from doing so. The only question for determination is whether the judgment canceling the 900 shares of stock, issued to Draney, Gosling, and Ryan as before stated, should prevail. The question, therefore, that controls this case is one of law.

Counsel on both sides have devoted considerable space and effort in their respective briefs to a review of certain cases which they contend are decisive of the questions here involved. Defendants' counsel contend that in view that the plaintiffs, with the exception of Margaret Kay,      1, 2 have acquired their stock subsequent to the transaction of which they complain, they have no standing here. They further contend that, Margaret Kay being fully advised respecting the issuance of the stock, and in view that neither she nor the corporation has been defrauded or injured in any way, neither she nor the corporation has any legal cause for complaint. In support of their contentions counsel, among other cases, cite and rely on *Home Fire Ins. Co.* v. *Barber*, 67 Neb. 644, 93 N. W. 1024, 60 L. R. A. 927, 108 Am. St. Rep. 716; *Blum* v. *Whitney*, 185 N. Y. 232, 77 N. E. 1159; *Garretson* v. *Pacific Crude Oil Co.*, 146 Cal. 184, 79 Pac. 838; *Alexander* v. *Searcy*, 81 Ga. 536, 8 S. E. 630, 12 Am. St. Rep. 337; *Clark* v. *American Coal Co.*, 86 Iowa, 436, 53 N. W. 291, 17 L. R. A. 557; *Eggleston* v. *Pantages*, 93 Wash. 221, 160 Pac. 425. Upon the other hand, counsel for plaintiffs contends that, so long as either the corporation or any of the stockholders suffers injury, he may seek redress in the courts, regardless of whether he acquired his stock before or after the injurious act

or transaction complained of, provided he is not a mere inter-
loper and is not for some other reason estopped from bringing
and maintaining an action.   The principal cases relied on by
plaintiffs' counsel are *Politz* v. *Gould,* 202 N. Y. 11, 94 N. E.
1088, 38 L. R. A. (N. S.) 988, Ann. Cas. 1912D, 1098; *City of
Chicago* v. *Cameron,* 120 Ill. 447, 11 N. E. 899; *Hanna v.
Lyon,* 179 N. Y. 107, 71 N. E. 778; *Harvey* v. *Meigs,* 17 Cal.
App. 353, 119 Pac. 941; *Old Dominion Copper Mining &
Smelting Co.* v. *Bigelow,* 203 Mass. 159, 89 N. E. 193, 40 L.
R. A. (N. S.) 314; and *Just* v. *Idaho Canal, etc., Co.,* 16 Idaho,
639, 102 Pac. 381, 133 Am. St. Rep. 140.   While counsel for
both sides have each cited a number of additional cases, yet
the foregoing sufficiently illustrate the propositions that both
sides contend for.   While much is said in the cases cited by
counsel for the defendants which is commendable, yet there is
likewise much said in the cases cited by counsel for plaintiffs
that is most salutary doctrine.   Upon the whole, we are of the
opinion that the better reason and the weight of authority are
found in the cases cited by plaintiffs' counsel.   We are of
the opinion, however, that the case at bar is not controlled by
either that class of cases cited by the defendants which hold
that stockholders who acquired their stock subsequent to the
transaction complained of cannot be heard to complain, nor
by those cited by plaintiffs' counsel, in which it is held that,
in case the corporation has suffered injury, and it does not
sue in its own right, any stockholder may sue, regardless of
whether he acquired his stock before or after the wrongful
acts or transactions complained of.   In our judgment the test
should be whether the corporation or any stockholder has suf-
fered a tangible wrong or injury to his property rights
through the wrongful act or acts of the directors, officers, or
stockholders complained of, and not whether the stockholder
acquired his stock before or after the wrongful acts com-
plained of, provided he is not a mere interloper and is acting
in good faith, and is not for some other reason estopped from
maintaining an action.   Cases in which the stockholders may
complain are, however, not cases like the one at bar, where
the alleged wrongful acts complained of relate entirely to an
agreement between the promoters of the corporation, and

where all of the persons who subsequently became stock-holders have received full value and have not been deceived in any way, and where the corporation has likewise received full value for the stock issued by it. The case at bar, in our judgment, is controlled by the decisions in the cases of *Inland Nursery & Floral Co.* v. *Rice,* 57 Wash. 67, 106 Pac. 499; *Eggleston* v. *Pantages,* 93 Wash. 221, 160 Pac. 425, and *Garretson* v. *Pacific Crude Oil Co.,* 146 Cal. 184, 79 Pac. 838, and other like cases.

In the first case cited above the same question was involved that is involved here. The Supreme Court of Washington, in the course of the opinion, said:

"The gist of the action, and the act around which the alleged fraud centers, is the exchange of the property of Rice and Mumm for stock of the company at a valuation of $25,000. While the complaint alleges such act to be fraudulent, there is no sufficient allegation of facts in connection therewith to afford the appellant the relief it here seeks. Fraud, to be actionable, must result in injury, and it nowhere appears that injury has resulted to any one because of such exchange. It does not appear but that subsequent stockholders purchased with full opportunity for investigation into the condition and assets of the company, and that the stock they purchased was fully worth the sum paid therefor. If, therefore, subsequent stockholders obtained full value, there can be no element of injury or fraud as to them. No complaint is made as to creditors.

"The mere fact, notwithstanding it is alleged as wrongful and fraudulent, that the promoters of the company exchanged their property for stock of the company at a price agreed upon between themselves and the company, no rights of creditors being involved and subsequent stockholders obtained full value in the purchase of their stock, gives no right of action in the company to subsequently cancel such promoters' stock upon the mere allegation of less valuation."

That case is approved and followed in the subsequent case of *Eggleston* v. *Pantages,* supra, where the court uses this language:

"Moreover, they were subsequent stockholders. They obtained full value in the purchase of their stock. The dividends which they received during the first three years furnished ample evidence of that fact. In such a case, where the rights of creditors are not involved, it is immaterial in what or how prior stockholders paid for their stock."

To the same effect is *Garretson* v. *Pacific Crude Oil Co.,* supra. Our attention has not been directed to a single case— indeed, we do not think there is such a case—where it was held that the promoters of a corporation who owned the property which is to be transferred to the corporation in ex- change for corporate stock, or a portion of it, may not agree among themselves respecting the amount of stock that shall be issued for the property and how it shall be apportioned among the promoters. Indeed, the principle just stated is recognized in all the cases. In view of that, let us pause a moment to examine in what way Anderson, Draney, Gosling, and Ryan have defrauded or injured any one of the plaintiffs, or any other stockholder of the company, or the company it- self. Anderson had certain coal entries to which he was un- able to acquire title unless he paid the government price there- for within the time limited by law. He had already been compelled to relinquish some of his entries because the time had expired within which to make payment, and he thus had induced his brother John and Dr. Edlen to make new entries. The latter entries would, however, again lapse, unless some one was found who would advance the money to pay the govern- ment price for the coal lands. In order to obtain the neces- sary funds for that purpose, Anderson entered into an agree- ment with Draney, Gosling, and Ryan, who agreed to promote and organize a corporation to take over the coal lands, and to have said corporation issue a certain amount of stock to An- derson for the lands, of which the three promoters would take a stipulated amount. Why could these four not agree on precisely what each should receive in case the corporation was formed and the coal lands conveyed to it? Is there any doubt that, acting in good faith and in no way violating any provision of the federal laws, Anderson could have obtained all or any part of the money with which to pay the govern- ment price for the coal lands from Draney, Gosling, and Ryan, with the agreement that a corporation should be or- ganized when title to the land was obtained with a specified amount of capital stock, of which the three should receive a certain proportion for the money advanced and for their services, aid, and assistance in organizing the corporation and

for obtaining credit for it? Is that not, in effect, what they did in entering into the agreement whereby Anderson was to receive $60,000 worth of stock, and Draney, Gosling, and Ryan were to receive $90,000 worth? They had, however, agreed among themselves that the corporation should be capitalized for $250,000, which left $100,000 worth of stock to be sold or disposed of otherwise. When the time came, however, to organize the corporation, the promoters did not have sufficient funds to comply with the statutory requirement of paying in 10 per cent. of $250,000, the capitalization agreed upon, in cash. They, however, did have sufficient funds to pay 10 per cent. of a $50,000 capitalization, and hence they incorporated for the latter amount with the intention of increasing the capitalization to $250,000 as soon as possible, which they subsequently did. So far as it affected the plaintiffs and all subsequent stockholders, the latter transaction was precisely the same as though the corporation had been organized for $250,000. The corporation did receive precisely the quantity of lands that it was intended it should receive, and every one who purchased stock received just what he purchased, and what it was intended he should receive and pay for. Indeed, every one concedes that the stock was, and is, worth in excess of what he paid for it. Even Mrs. Kay, who, it seems, was the prime mover in bringing this action against the defendants, over and over again conceded that her stock was worth far in excess of what she paid for it. The fact is that she demanded just four times as much for her stock as she paid for it. All the other stockholders who agreed to purchase stock before the corporation was organized received at least three times the par value of what they paid for the stock, and, so far as the record discloses, none received less than twice the par value of the stock that he paid for. Draney, Gosling, and Ryan are the only three who paid the full par value for the stock subscribed for by each in the articles of incorporation. Mrs. Kay and all the others who agreed in advance to take stock in case the corporation should be organized were given three dollars' worth of stock for every one dollar paid by them. Why did Draney, Gosling, and Ryan pay the par value of the stock? The answer is ap-

parent. It was because they had an agreement with Anderson whereby they were to receive 900 shares, which was to be distributed equally among the three. It was Draney, Gosling, and Ryan, or at least one of them, who paid the amount subscribed for by Anderson in the articles of incorporation. Anderson was to receive 600 shares, which he did receive.

Now, if this judgment is to prevail what is the result? Draney, Gosling, and Ryan, who, by their efforts, made Anderson's coal entries valuable, and who financed and organized the corporation, the stock of which always has been and now is conceded to be at least worth par, are deprived of everything except the stock which they paid for at par, while every other person who agreed to purchase stock in advance, and to whom stock was subsequently issued in accordance with his agreement, received three, or at least two, shares for each one paid for. But that is not all. As we have seen, there were 2,165 shares issued of which Draney, Gosling, and Ryan, including the 900 shares, held 1,168, or 171 more than half. They thus had the control of the corporation they had organized. The court, however, ordered them to surrender to the company 900 shares, which leaves them only 268 shares in a corporation which has 2,165 shares outstanding, and which they created and financed. Moreover, placing the 900 shares back into the treasury makes the inequality as between Draney, Gosling, and Ryan and the other stockholders still more pronounced. Instead of there being 2,165 shares outstanding in case the judgment stands, according to the record there will be only 1,235 shares outstanding. In addition, therefore, to receiving three for one the stockholders will necessarily have the value of their stock enhanced so as to make it four or five times the value they paid for it. Of course, there is no doubt that under the agreement Anderson, Draney, Gosling, and Ryan obtained a greater profit even than that. That was, however, entirely due to the agreement pursuant to which they went into the enterprise, and which they had a right to make. What they obtained by virtue of that agreement did not deprive either of the other stockholders, or the corporation, of anything to which they were or it was

legally entitled. And this is so, regardless of how the moralist might regard the transaction. Courts of equity are created and exist to prevent and to redress legal as contradistinguished from purely moral wrongs. The plaintiffs here do not, and, in sober truth, cannot, contend that Draney, Gosling, and Ryan, or either of them, defrauded or deceived plaintiffs, or either of them, or that the three have, or either of them has, taken or appropriated anything which legitimately belongs to the stockholders or to the corporation. What is it, then, that they complain about? It is in effect this: That although neither of them deceived, nor defrauded, any of the stockholders, nor took or withheld anything which belonged to them, or either of them, the three have taken a greater share of the stock than in the judgment of the complainants they should have taken for the services they rendered. The court, however, confirmed what Anderson had received, and no one is here complaining with regard to that. In view of that, and in view of all the facts, it is not easy for us to conceive how what Anderson received can be affirmed, while what Draney, Gosling, and Ryan obtained must be condemned. If Anderson had failed to obtain the necessary purchase price for the coal entries within the time required by law, he would necessarily have forfeited all of his rights thereto, and the coal lands would have reverted back to the government. If, therefore, the coal entries were worth the money paid therefor by the corporation—and no one contends that they were not—then their value is quite as much attributable to the efforts and acts of Draney, Gosling, and Ryan as to those of Anderson. Without the money to pay the government price the coal lands would have been worthless. If, therefore, Draney, Gosling, and Ryan provided the necessary funds, or obtained them in some legitimate way, they were entitled to the fruits of their efforts precisely the same as Anderson was entitled to the fruits of what he had performed. If it be held that Anderson has given the corporation an adequate consideration for the 600 shares, as the court found he did, it necessarily follows that Draney, Gosling, and Ryan likewise have done so. It follows, therefore, that the judgment cannot prevail.

In this connection it may not be improper to suggest that if the court felt that it should interfere at all, then it should not have stopped short of unscrambling the whole transaction leading up to the incorporation and the issuance of the stock. It is not the province of a court of equity to adjust all alleged inequalities, but, if in this case the court deemed that there were inequalities it should correct, it should have compelled all of the stockholders, including Anderson, Draney, Gosling, and Ryan, to return for cancellation all of the stock issued to any or all of them which is in excess of what they paid therefor. If the court went to that extent, however, then in order to do equity among the parties, let us again suggest, it should have made due allowance to Anderson Draney, Gosling, and Ryan for all that they did and for all the efforts and time they devoted to develop and make the coal entries available for incorporation, and also allow them proper compensation for what they did in obtaining credit for the corporation and in conducting its business affairs after it was organized. We mention these things, however, merely to illustrate how impracticable it is to determine the true equities in matters of this character as between the promoters and the subsequent stockholders of corporations. It is for this reason that courts ordinarily refrain from interfering with agreements and arrangements of the promoters of corporations, unless there is fraud or deception resulting in injury to creditors or to those who have a right to complain. In this case there is nothing of that character, and, hence, under such circumstances, courts do not attempt to establish poetic equality as between the parties who may become interested in the corporation. It does not follow that, because Draney, Gosling, and Ryan have profited in this matter, they necessarily have obtained something belonging to the plaintiffs, or to either of them, or to the corporation. Indeed, the record is conclusive that such is not the case. While it is true that, viewing the transactions merely in retrospect, it seems that Draney, Gosling, and Ryan have taken the lion's share, yet it is equally true that they obtained only what they had agreed to take in going into the enterprise. They had a right to propose and insist upon their own terms, and, unless and until

they have defrauded some one, or have taken something which legally belongs to another, their agreements must prevail.

The judgment, therefore, should be, and it accordingly is, reversed, and the cause is remanded to the district court of Weber County, with directions to set aside the judgment and to dismiss the action. Defendants to recover costs on appeal.

McCARTY, CORFMAN, THURMAN, and GIDEON, JJ., concur.

## On Application for Rehearing.

FRICK, J.

Respondents' counsel has filed a petition in which he assigns several reasons why a rehearing should be granted. Although the petition is not supported by argument or citations of authority, we shall, nevertheless, refer to a few matters which we deem material.

It is insisted that we erred in assuming that the coal lands referred to in the opinion were purchased with the "private funds of appellants." We made no such assumption, and the facts with relation to how the funds for that purpose were obtained are correctly stated in the opinion. It is not necessary to repeat those statements. While it is true that the money was paid to the corporation and the lands were purchased in its name and technically with its funds, yet the fact is that it was through the efforts of Draney, Ryan, and Gosling that the funds were obtained, and that the corporation was organized. No one asserted—certainly we did not—that the money of the other subscribers for stock was not used by the corporation to pay for the coal lands; nor did we assert that the money that was paid to the corporation was not corporate funds. All that we did assert, and what the record shows, is that it was through the efforts of the three individuals last above named that the money was finally obtained to purchase the lands, and that those who subscribed for stock in the corporation obtained precisely the amount of stock it was agreed they should have, and that they paid for.

We further held that the additional stock which was issued to Draney, Ryan, Gosling, and Anderson was issued in pursuance of the agreement which was entered into before the corporation was organized, and with which neither the corporation nor any of the other subscribers for stock were connected or had any concern. That fact is so palpable that no further comment is necessary.

Neither did we hold or suggest that Draney, Ryan, Gosling, and Anderson did not, in the final distribution of stock, obtain a larger proportion than did the other stockholders. The district court, however, found and decided (and no one complained of the finding and decision) that the 600 shares of stock which were issued to Anderson out of the 1,500 shares were properly issued to him. If that finding and decision is right, then, in view of all the facts and circumstances of this case, the court's finding and decision that the 900 shares which were issued to Draney, Ryan, and Gosling out of the 1,500 shares, of which Anderson received 600, were illegally issued cannot also be right, and we so held. Both the district court and respondents' counsel seem to overlook or ignore the fact that if the respondents were in a court of equity so were the appellants; that, if there were equities in favor of respondents, there were also equities of equal weight in favor of appellants; and that, in a controversy between respondents and appellants respecting the distribution of the 1,500 shares of stock, in view of all the facts and circumstances, appellants, and not respondents, should prevail. That our conclusions and judgment to that effect are right we entertain no doubt.

The foregoing covers every material matter which is urged in the petition, except one. The one matter not covered by the foregoing is that we erred in assuming that the judgment for attorney's fees was against Draney, Ryan, and Gosling. Respondents' counsel is clearly right with respect to that matter. The error should, however, be charged to the writer alone. True, appellants' counsel, in their brief, asserted that the "judgment against the appellants for costs and $750 fees is palpably erroneous." This, of course, included all of the appellants. Counsel had, however, in another part of their brief, stated that the judgment

for costs was against the appellants Draney, Ryan, and Gosling, and that the judgment for attorney's fees was against the appellant corporation alone. The writer is to blame, therefore, for not examining the judgment more closely. There is no excuse for not doing so, and I desire to assume the whole responsibility for the error. The error, however, has not the remotest effect upon the correctness of the conclusions stated in the original opinion. If the judgment for attorney's fees against appellants Draney, Ryan, and Gosling is erroneous, as it clearly is, it is doubly so as against the corporation. The corporation had wronged no one. Indeed, according to the judgment, no one suffered injury except the corporation. To redress that injury Draney, Ryan, and Gosling were required to return to it the 900 shares of stock. Why, then, should the corporation be required to be penalized to the extent of $750, or any other amount, for attorney's fees? Further comment is unnecessary. In view, however, of the writer's error, the former opinion must be modified. It is therefore ordered that the opinion as originally written be, and the same is hereby, amended by eliminating therefrom the following: Commencing with the words "By the court" at the top of page 9 of the original opinion as filed in this court down to and including the words "it did not belong," on line 15 from the top of said page 9, are hereby eliminated from the opinion as originally written and the matter so eliminated will not be published as part of the opinion, but the original opinion will remain on file. In all other respects the opinion is adhered to as written.

For the reasons hereinbefore stated the petition for a rehearing is denied.

CORFMAN, C. J., and THURMAN and GIDEON, JJ., concur.

McCARTY, J., died prior to filing of petition for rehearing.