JOHNSON v. DRANEY et al.

ANDERSON v. JOHNSON et al.

(Circuit Court of Appeals, Eighth Circuit. October 26, 1922.)

Nos. 6100, 6118.

Mines and minerals ⊜83—Evidence held to show agreement that defendant was to share equally, with one advancing money, net proceeds of property developed.

In suit by one who had advanced money to one defendant for work in finding and exposing coal on land while part of the public domain, for half the shares of stock issued by a corporation to such defendant in payment for such land, evidence *held* to support trial court's conclusion that complainant was to share equally with such defendant in whatever the latter should finally get out of the property, so that it was proper to deduct from the shares issued to such defendant for the land the shares he gave to other defendants and other parties who had assisted him in developing the property, and then divide the remainder of the shares between complainant and such defendant.

Appeal from the District Court of the United States for the District of Utah.

Suit by Charles Johnson against F. Julius Anderson, William H. Draney, and others. From a decree dismissing the cause as to Draney and others, complainant appeals; and from a decree against F. Julius Anderson, he appeals. Affirmed.

C. C. Richards, of Salt Lake City, Utah (D. A. Skeen and W. J. Mitchell, both of Salt Lake City, Utah, on the brief), for appellant in No. 6100 and appellee Johnson in No. 6118.

L. I. Layton, of Farmington, Utah, for appellant Anderson.

Charles R. Hollingsworth, of Ogden, Utah, for appellees Draney, Gosling, and Ryan.

Before LEWIS and KENYON, Circuit Judges, and YOUMANS, District Judge.

LEWIS, Circuit Judge. Johnson sued Anderson and three other stockholders in the Lincoln-Kemmerer Coal Company, a Utah corporation, for half of the shares which that company issued in payment for 147.67 acres of coal land (Lots 6, 7, 8 and 9 in Sec. 1, T. 21, R. 116, in Evanston, Wyoming, Land District), on the claim that while the land was a part of the public domain he had let Anderson have $1,400.-00 to use in work to be done in finding and exposing coal thereon, and as consideration therefor it was verbally agreed between them that Johnson should have a half-interest in the land. Anderson got $400.00 in the Spring of 1913, and in August following Johnson let him have $1,000.00 more. Anderson began prospecting for coal on these and other lands in 1912, and in August he filed on Lots 6, 7, 10 and 11 of Sec. 1, at the Evanston land office. At the same time Dr. Elden, of Moline, Ill., who was acting with Anderson, filed on Lots 8, 9, 13, 14 and SE ¼ NW ¼ Sec. 1. Elden was to send money to Anderson to prospect for coal and to organize a company to take over the property. He did neither. In April, 1913, Anderson and Elden amended their filings or declaratory statements, Anderson covering Lots 10, 13, 14, 15 and SE¼ NW¼, and Elden covering Lots 6, 7, 8 and 9. Anderson spent all the money he had on the property and then got $1,000.00 from his brother John, of Moline, Ill. When that had been expended he applied to Johnson and got the $1,400.00. In July, 1913, John Anderson filed on Lots 6, 7, 8 and 9. Julius Anderson directed all of these filings. The only explanation as to why he had his brother file on the lots then covered by the entry of Dr. Elden is that the latter had not kept his agreement and it was feared that he might drop out and the lots would be lost. Thereafter Elden relinquished his filing on Lots 8 and 9 and obtained U. S. Patent for Lots 6 and 7, for which the purchase price was $10,331.90, and John Anderson obtained U. S. Patent for Lots 8 and 9, for which the purchase price was $8,114.80. They conveyed their titles to the Lincoln-Kemmerer Coal Co., which came about in this way: In the Spring of 1914, and before the purchase price on either entry was paid, Julius Anderson went to Ogden, Utah, for the purpose of finding a way to organize a company to take over the property and develop and work it as a mine, and to raise the $18,446.70, purchase price, soon to be needed to pay for the

land, else the entries and right to purchase would lapse. He met his co-defendants, Draney, Gosling and Ryan and asked them to assist him. They examined the property, and negotiations resulted in an agreement to organize a corporation with a capital of $250,000.00, to which the property should be and was later conveyed by Elden and John Anderson in compliance with this written contract:

"This agreement made and entered into this second day of May, 1914, at Ogden, Utah, by and between F. Julius Anderson, party of the first part, and W. H. Draney, T. D. Ryan and C. H. Gosling, parties of the second part, witnesseth:

"That, whereas, the party of the first part and the parties of the second part are engaged in promoting the incorporation of a coal company with property at or near Kemmerer, Wyoming,

"And whereas, upon the incorporation of said company and the issuance to the party of the first part of $150,000.00 of the capital stock of said company, the party of the first part does promise to sell and deliver to the parties of the second part and the parties of the second part have promised to purchase of and from the party of the first part for the sum of One Dollar and other good and valuable consideration, $90,000.00 of the capital stock of said company from the $150,000.00 of said capital stock to be so issued to the party of the first part:

"Now, therefore, it is mutually agreed and understood by and between the parties hereto that upon the organization of said company and the issuance to the party of the first part of $150,000.00 of the capital stock of said company, the said party of the first part upon demand hereby agrees to sell and deliver to the parties of the second part, and the said parties of the second part hereby agree to purchase of and from the party of the first part, $90,000.-00 of the capital stock of said company from the $150,000.00 of said capital stock to be issued to the party of the first part for the sum of one dollar and other good and valuable consideration.

"Witness the hands of the parties hereto at the place and day and year first above written. . F. Julius Anderson,

"Party of the First Part.

"W. H. Draney,

"T. D. Ryan,

"C. H. Gosling,

"Parties of the Second Part."

The 1,500 shares were apportioned between the defendants accordingly,—600 to Julius Anderson and 300 to each of the other three defendants. At first the other defendants understood or assumed that Julius Anderson was the entryman, but that was met by his producing a power of attorney from Dr. Elden and a letter from his brother giving him power to deal with their interests. He assured his co-defendants that he would settle with Dr. Elden and his brother by giving them shares out of his 600, which he did. He also let it be known from time to time after the agreement was made that there were others who had assisted him and to whom he would give some of his shares, among them appellant Charles Johnson, to whom he had a certificate issued for 30 shares. The other defendants, in addition to the 300 shares received by each of the 1,500, subscribed and paid for treasury stock (which was the remaining 1,000 shares), and induced their friends and business associates to also take up and pay for treasury stock, and in this way, without any contributions or assistance from other sources, they obtained the necessary corporate funds to pay the purchase price for the land, buy machinery and needed equipment for a mine, and

start work on the property, and in the course of about 20 months after first meeting Julius Anderson the property had been purchased and made a valuable mine through their investments and efforts. At first several thousand dollars immediately needed were obtained on notes of Draney, Gosling and Ryan. Johnson received the certificate for 30 shares from Anderson in the Spring of 1915 at Rock Springs, Wyo., by mail, and did not begin this suit until October, 1919, although he says that in the Fall of 1917 he attended a trial in the State court at Ogden which involved the question as to whether the 1,500 shares that went to pay for the property had been rightfully issued and distributed, and that he went there to find out about his interest in the company, yet he admits that he said nothing to Julius Anderson, who was also at the trial, about his interest, nor to anyone else regarding the matter. That was a stockholders' suit (Robertson v. Draney, 53 Utah, 263, 178 Pac. 35), in which cancellation of certificates for 900 shares issued to Draney, Gosling and Ryan, and 600 shares issued to Julius Anderson, was sought, but denied on the ground that the transaction through which they had been issued to those parties was entirely legitimate, that Draney, Gosling and Ryan had rendered value for the shares issued to them and that other stockholders had no just cause of complaint. We think that conclusion was right, and none other could have been reached on the facts, which are there recited in more detail than need be for the issues here.

At the outset we may say that the facts convince us that Draney, Gosling and Ryan, as well as Julius Anderson, each rendered valuable consideration for the shares which they received on the organization of the company, issued in payment for the land, and that Draney, Gosling and Ryan had rendered that consideration for the shares which they got long before they had knowledge, or notice that put them to inquiry, of the rights claimed by Johnson in this suit, and that on the most well known principles Johnson's conduct and long delay estop him from claiming any part of those shares or their value from Draney, Gosling, and Ryan. But, as that was not the ground on which the trial court placed its conclusion, we turn to a consideration of the facts, as it did, to find out just what the understanding and arrangement was between Johnson and Julius Anderson when the former let the latter have $1,400.00 to expend on the property.

Johnson testified that he had known Julius Anderson since 1907, that Julius came to him at Rock Springs in the early part of 1913 and told him that he needed about a thousand dollars to be expended on the property so he could get capital interested with him, and he said that if Johnson would put up what money he needed he would let Johnson have a half-interest in the proceeds of the property. Later his counsel had him explain that what he meant by half of the proceeds was a half-interest in the property; and then later, in response to a question by the court, he testified that when Anderson said he would give him half of the proceeds he understood it to be half of what Anderson would get out of the property from people who had money, or something of that sort.

Julius Anderson testified that after spending about $2,000.00 of his own money and then a thousand dollars which he got from his brother John he went to Johnson at Rock Springs in the Spring of 1913 and asked him for money needed to do more work in exploring the property, and that he agreed with Johnson that if he put up the money needed he could come in with him and have a half-interest in the property, that he wanted to make a showing to the people they might interest in the property so as to get some money and form a corporation, and show people that they had coal. On cross-examination he testified that he was to take care of those under him out of the 600 shares he got, that he did not give Johnson 300 shares because he had too many other parties to take care of, that Johnson was entitled to half of what he got out of the coal lands, he was entitled to receive half of the proceeds, half of the full amount of the proceeds, half of whatever it brought, that he sent Johnson his certificate for 30 shares in the Spring of 1915, and did not see him thereafter until the Fall of 1917 at Ogden during the trial of the other suit, but Johnson did not say anything to him about the shares he should have at that time. He testified that Dr. Elden and his brother John were partners with him and that he took care of their interests out of the 600 shares, and that Johnson was also his partner in the lands.

From this testimony the trial judge reached the conclusion that Johnson was to share equally with Julius Anderson in whatever Anderson should finally get out of the property. On this basis there was first deducted from the 600 shares issued to Julius Anderson the shares which he gave to Dr. Elden, his brother John and other parties who had assisted him in developing the property, and then the remainder was divided equally between Julius Anderson and Johnson, leaving for each 162½ shares, and thereupon it was decreed that the cause be dismissed as to defendants Draney, Gosling and Ryan and that the defendant F. Julius Anderson held 162½ shares of the capital stock of the coal company in trust for the plaintiff Charles Johnson, and that he make a good and sufficient transfer and delivery of said shares to Johnson. Johnson appealed from the decree dismissing the cause as to Draney, Gosling and Ryan, and F. Julius Anderson appealed from the decree against him. We are not prepared to say that the conclusions of the court and the decree based thereon in each instance are inequitable and unjust, and unsupported by the facts, nor that there was error in either respect; hence, on both appeals the decree must be and is

Affirmed.