L. Bryan BERGESON, Appellant,

v.

LIFE INSURANCE CORPORATION OF AMERICA, a corporation, Cleo H. Bullard, Lewis R. Rich, Adrian S. Wright, W. Meeks Wirthlin, Harry D. Pugsley, Lawrence H. Birrell, Herbert J. Zimmerman, and J. Robert Thomas, Appellees.

Cleo H. BULLARD, Adrian S. Wright and W. Meeks Wirthlin, Appellants,

v.

L. Bryan BERGESON and Life Insurance Corporation of America, a corporation, Appellees.

Cleo H. BULLARD, Adrian S. Wright, W. Meeks Wirthlin and Lewis R. Rich, Appellants,

v.

L. Bryan BERGESON and Life Insurance Corporation of America, a corporation, Appellees.

Nos. 5914, 5977, 6000.

United States Court of Appeals Tenth Circuit.

March 16, 1959.

Rehearing Denied April 16, 1959.

George M. McMillan, Salt Lake City, Utah, for L. Bryan Bergeson.

Ray R. Christensen, Salt Lake City, Utah (Moreton, Christensen & Christensen, Salt Lake City, Utah, were with him on the brief), for Lawrence H. Birrell, Herbert J. Zimmerman and J. Robert Thomas.

Calvin Rampton, Salt Lake City, Utah (David K. Watkiss and Harry D. Pugsley, Salt Lake City, Utah, pro se, were with him on the brief), for Harry D. Pugsley.

S. N. Cornwall, Salt Lake City, Utah (Jack B. Darragh, Irene Warr, and Joseph C. Fratto, Salt Lake City, Utah, were with him on the brief), for Cleo H. Bullard, Adrian S. Wright and W. Meeks Wirthlin, and Lewis R. Rich.

No appearance for Life Insurance Corporation of America.

Before HUXMAN, MURRAH, and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

These three interrelated appeals arise from a stockholder's derivative suit in which federal jurisdiction is based upon diversity of citizenship. Bergeson, the plaintiff below, sued as a stockholder in, and for the benefit of, Life Insurance Corporation of America.[1]

The complaint sets out two claims. The first is directed against Bullard, Rich, Wright, Wirthlin and Pugsley,[2] as officers and directors of the company and as members of a partnership known as Licoa Agency Company, and against Birrell, Zimmerman and Thomas,[3] as part-

---

1. Hereinafter Bergeson, the appellant in No. 5914 and one of the appellees in Nos. 5977 and 6000, will be referred to as plaintiff or by name. Life Insurance Corporation of America, one of the appellees in each of the three cases, will be referred to as the company.

2. These defendants will be referred to by name or collectively as the Licoa group.

3. These defendants will be referred to collectively as the accountants.

nership members of an accounting firm. It charges that the defendants improperly and negligently caused the company to come into existence with an impaired financial condition.

The second claim goes only against the members of the Licoa group and alleges that they improperly and in violation of their fiduciary duty as corporate officers and directors issued company stock without consideration.

Defendant Pugsley, a member of the Licoa group, raised the defense of res adjudicata and obtained a summary judgment in his favor on each count.

The motions of all defendants for summary judgment on the first claim were sustained on the ground that there was no showing of any damage to the company.

The issues in connection with the second claim were presented to the court for determination on the basis of a stipulation of facts, answers to interrogatories, responses to requests for admission, depositions, and pre-trial conference statements. The court held that the members of the Licoa group, except Pugsley, were jointly and severally liable for the market value of 2,000 shares of stock issued to the Licoa partnership, fixed the market value of the stock at $20 per share, and entered judgment against these defendants in the sum of $40,000.

No. 5914 is an appeal by plaintiff Bergeson from the judgment in favor of Pugsley on both claims and in favor of all defendants on the first claim.

No. 5977 is an appeal by defendants Bullard, Wright and Wirthlin, members of the Licoa group, from the adverse judgment on the second claim. It was filed for protective purposes as defendant Rich, the other group member against whom the judgment was entered, had moved for a new trial and thus stayed the appeal time as to him.

In No. 6000 defendants Bullard, Wright, Wirthlin and Rich all join in an appeal from the adverse judgment on the second claim. This appeal was taken after Rich's motion for new trial had been denied. The only difference between No. 5977 and No. 6000 is that Rich is a party to No. 6000 but not to No. 5977.

The twice supplemented record in these appeals is lengthy and complex. The disorderly method of presentation is so coupled with the inclusion of extraneous material and the omission of relevant material that he who would find a pertinent fact must travel an intricate labyrinth, the paths of which lead more often to confusion rather than understanding. All this is in a case in which, so far as we can ascertain, there is not a single disputed factual issue.

The basic facts are relatively simple. Sometime in 1951 defendants Bullard, Wright, Wirthlin and three others, who are not parties hereto, formed a partnership known as Licoa Agency Company.[4] Prior to the events with which we are concerned, one of the three others sold his interest to defendants Pugsley and Rich, each obtaining one-half thereof. The partnership, in April, 1951, caused the organization, under Utah law, of a mutual benefit life insurance company known as Life Insurance Corporation of America, the company for whose benefit this derivative suit was brought. The defendant members of the Licoa partnership were, at varying times, officers and directors of the company so organized. To assist the new company in getting started the partnership advanced to it about $23,800 and supplied furniture and equipment of the value of $4,145. The partnership was to receive overriding commissions on all insurance written by the company. The company engaged in the business of a mutual insurer but its operations were not financially successful.

In May, 1952, the members of the company voted to change from a mutual company to a stock company and adopted amendments to the articles of incorporation to effectuate this change. A permit was obtained by the company from

---

4. Hereinafter referred to as the partnership.

the Utah Securities Commission to make a public offering of its stock and, under the direction of the Utah Insurance Commissioner, an escrow agreement was made with the Utah Savings and Trust Company under which the proceeds from the sales campaign were to be put in escrow. A campaign was then undertaken to sell 20,000 shares of stock at $20 per share. Subscription notes were used which commonly provided for installment payments with no right to collect deficiencies. In the event of default the subscriber would receive only the stock for which he had paid at the $20 offering price and the company could not maintain an action to recover the unpaid installments.

The company employed an accounting firm in which defendants Birrell, Zimmerman and Thomas were partners. The accounting services were performed principally by one McGee who was joined as a defendant but dismissed for lack of service. On June 22, 1953, the accountants made a letter report to the company on its financial condition and therein showed assets in the amount of $214,780. This report was furnished to the Utah Insurance Commissioner who, on July 7, 1953, authorized the company to do business as a stock insurance company and also authorized the release of the escrow. The company then began business as a stock insurer.

The partnership, Licoa Agency Company, was terminated except for the distribution of assets as of January 31, 1954, and then had as its only asset a claim against the company on account of the cash advanced, the equipment furnished, and the claimed overriding commissions. On or prior to March 25, 1954, the exact date appearing nowhere in the record, the directors of the company approved the issuance of company stock to the partnership in satisfaction of the claim asserted by the partnership against the company.

In March, 1954, the company submitted its annual report to the Utah Insurance Commissioner who, after examination, disallowed as admitted assets items totaling $144,062.82 and found that with such disallowance the capital of the company was impaired. The company was given time to make good the deficiency and in October, 1955, a reorganization was effected. Bankers Life and Casualty Company, an Illinois corporation, put $200,000 into the company for approximately 90% of its stock. Stock outstanding before the reorganization was exchanged for new stock in the ratio of one share of new stock for each 13.5324 shares of the old stock.

In May, 1953, plaintiff Bergeson purchased 83 shares of company stock for $1,660. Upon the reorganization these 83 shares were voluntarily exchanged for 6.1334 shares.

■■ We are not impressed with defense arguments that the requirements of Rule 23(b), F.R.Civ.P., 28 U.S.C.A., governing secondary actions by shareholders, have not been satisfied. The trial court found to the contrary and we agree. The defense of laches was interposed by certain defendants and while the trial court recognized some merit in the defense it made no express finding thereon. The defense of laches is primarily addressed to the trial court.[5] In the absence of a trial court finding we have carefully examined the record and are convinced that the action is not barred by laches.

■ The plaintiff's basic contentions in his first claim are that the Licoa group defendants have breached a fiduciary duty which they owed the company as promoters, directors and officers, and that the accountants have breached a similar duty which is claimed to have arisen from the alleged fact that their partner McGee was a promoter and his responsibility is theirs. Corporate officers and directors have a fiduciary or quasi fiduciary relationship to a corporation which requires them to act loyally and in good faith without assuming any position in conflict with the interests of

5. Standard Oil Company v. Standard Oil Company, 10 Cir., 252 F.2d 65, 76, 77.

the corporation.[6] While the responsibility of promoters is not so clearly defined, they too must act fairly and honestly in their dealings with the corporation.[7] This fiduciary duty is said to have been breached by the misconduct of the defendants relating to the financial condition of the company and resulting in the company securing authorization to act as a stock insurer and thereafter acting in that capacity without the required capital.

■■ Utah law provides that a stock insurer transacting life insurance business must have a minimum capital of $100,000 and a minimum surplus of $25,000.[8] These minimum requirements are for the protection of the public. The company had no right to engage in the life insurance business as a stock insurer unless the requirements were satisfied. The fact that it had no such right does not mean that its promoters, directors or officers or anybody else is under any duty to supply it with assets sufficient to meet such requirements.

The objective of the company was to qualify as a stock insurer. To obtain the required financing the officers and directors instituted a stock sale campaign and assembled items which were held out as assets. A report showing the claimed assets was presented to the insurance commissioner. He granted the necessary authority. If the assets were not sufficient, the permit should not have been granted. However, it was granted and the corporate objective attained. If, as argued, the assets did not meet the minimum requirements the wrong was to those members of the public who thereafter dealt with the company. The company has lost nothing. The fact that it may have gained something to which it was not entitled does not lead to the conclusion that it was thereby deprived of anything. The company received a benefit, the grant of the desired authority. The detriment, if any, was suffered by others.

Great emphasis is placed on the improper inclusion of items as assets and on the improper valuation of assets. Such errors did not injure the company in any compensable sense. Neither mistakes nor misstatements in classification or valuation deprived the company of anything. The property classified and valued was still there. Whatever harm might have resulted to stock purchasers, policyholders or creditors was not a company loss. If the state officials considered that they had been deceived, they could have taken appropriate steps to revoke the authority but those steps were never taken and ultimately corporate reorganization, which admittedly met the Utah requirements, was attained.

Plaintiff's counsel urges that there was misconduct in first asserting value in the subscription notes and later acknowledging that they had no value. Here again the company lost nothing. The notes were not enforceable and the state officials knew it, yet the authority was granted. Later the state officials determined that the notes were without value and the officers and directors wrote them off as assets. The situation may cause one to lift a querulous eyebrow but it does so because the company received a benefit, not because the company suffered any detriment.

■ Counsel says that the defendants in the Licoa group violated a fiduciary obligation by not disclosing to the company its true financial condition. A corporation necessarily acts vicariously. It is elementary that a corporation can acquire knowledge only through its officers and agents.[9] Their knowledge is the knowledge of the corporation.

The liability of the accountants is said to arise from the fact that one of their partners, McGee, was a promoter of

6. 19 C.J.S. Corporations § 761, pp. 103 and 107.

7. Cf. Davis v. Las Ovas Company, Incorporated, 227 U.S. 80, 86, 33 S.Ct. 197, 57 L.Ed. 426.

8. Utah C.A.1953, § 31–11–1.

9. Mary Jane Stevens Co. v. First Nat. Bldg. Co., 89 Utah 456, 57 P.2d 1099, 1122.

the company and that their June 22, 1953, report on the company's financial condition was prepared negligently and contrary to accepted accounting practices. McGee was not a promoter of the company. It was in existence as a mutual insurer long before McGee's employment as an accountant. In his severe attack on the June 22, 1953, report counsel for plaintiff overlooks the carefully worded qualifying language thereof. But even if that report did contain an improper inclusion of assets, exclusion of liabilities and valuation of assets, there is no showing of detriment to the company. The report was used by the company to obtain the authorization which it sought.

The only other misconduct charged in the first claim relates to the issuance of corporate stock to the Licoa partnership without consideration. This action is the specific basis of the second claim. It is sufficient to say here that such conduct did not affect the attainment of the corporate objective to secure authority to act as a stock insurer.

■■ In a derivative action such as this the plaintiff must maintain a claim not for himself or any stockholder or any creditor but solely for the corporation.[10] This he has failed to do. The fundamental theory of the first claim, that the corporation was damaged by acts and omissions of the defendants which resulted in its authorization to act as a stock insurer without the capital and surplus required by Utah law, is wholly fallacious. Whatever improprieties there may have been, the result was not a legal injury to the corporation. If stock purchasers, policyholders or creditors were injured by the misconduct of the defendants, the remedy lies in appropriate actions by them. We agree with the trial court that there may be no recovery on the first claim. This conclusion renders it unnecessary to consider separately the special defenses asserted by the accountants.

The basis of the second claim is that the defendant members of the Licoa group caused the corporation to issue stock to the Licoa partnership without any consideration passing to the company for such stock. The question as to whether a corporation can recover from promoters who controlled it the value of stock issued to them in exchange for property in excess of its reasonable value, even though the corporation ratified the transaction, has resulted in a contrariety of views which were discussed by this court in San Juan Uranium Corporation v. Wolfe, 10 Cir., 241 F.2d 121. In that case, arising in Oklahoma, this court accepted the so-called Massachusetts rule,[11] and rejected the rule laid down in Old Dominion Copper Mining and Smelting Company v. Lewisohn, 210 U.S. 206, 28 S.Ct. 634, 52 L.Ed. 1025. The trial court, recognizing that there was no Utah case directly in point, held that the decision in Roberson v. Draney, 53 Utah 263, 178 P. 35, indicated that Utah would follow the Bigelow rule and, accordingly, disposed of the case on that basis. We have heretofore applied the Bigelow rule for Oklahoma in the absence of any choice by that state between the Bigelow and Lewisohn rules. The trial judge, from the breadth of his experience in Utah, believes that state will follow the Bigelow rule. We shall accept his view as to its applicability.

However, the Bigelow rule is not determinative of the issues presented by the second claim. Bigelow applies when the promoters make secret profit. Here the promoters did not profit. While the

---

10. Koster v. (American) Lumbermens Mutual Casualty Co., 330 U.S. 518, 522, 67 S.Ct. 828, 91 L.Ed. 1067; Arn v. Dunnett, 10 Cir., 93 F.2d 634, 636, certiorari denied 304 U.S. 577, 58 S.Ct. 1046, 82 L.Ed. 1540, distinguished but not reversed by San Juan Uranium Corporation v. Wolfe, 10 Cir., 241 F.2d 121, 123; cases collected in dissenting opinion of ■■■

Judge Phillips in Amen v. Black, 10 Cir., 234 F.2d 12, 31, 32, notes 8 and 9; 19 C.J.S. Corporations § 821, p. 226; 13 Am.Jur., Corporations, § 461, p. 506.

11. Old Dominion Copper Mining & Smelting Co. v. Bigelow, 203 Mass. 159, 89 N.E. 193, 40 L.R.A.,N.S., 314.

members of the Licoa group were the promoters, officers and directors of the company and did authorize the issuance of stock to their partnership, they did so on the basis that there was full consideration therefor. Part of the consideration claimed was cash and property, the value of which is not questioned. The remainder was for services rendered in producing insurance business. The adequacy of the consideration is the sole question. The bookkeeping practices of the company which failed to disclose the liability to the partnership may have misled stock purchasers, state officials, and others but the wrong to such persons was not a wrong to the company.

Plaintiff contends that at the time of the conversion from a mutual insurer to a stock insurer a new corporate entity came into being. While there are important differences between a mutual insurer and a stock insurer,[12] Utah recognizes the right of a mutual company to change to a stock company.[13] The uncontradicted statement of defendant Bullard in his deposition was that the plan of the promoters of the company was to organize a "mutual company, to use that as the basis of the corporation, and then to convert it at a later date to the stock company." Such plan was recognized in the original by-laws which set up procedures to be followed in the event "the corporate structure is changed to a capital stock insurer." The necessary amendment to effect the change was unanimously adopted by the members.

There was no change of either name or officers. The mere amendment of articles of incorporation does not create a new corporation.[14] This rule has been applied to the reorganization of insurance companies.[15]

The partnership admittedly advanced cash and furnished equipment to the company in the total value of about $28,000. The trial court held that this did not constitute consideration for the stock issued because of the inhibitions contained in the Utah statutes with reference to the borrowing of money by a mutual insurer.[16] Among other things, the Utah law forbids the payment of a loan by a mutual except out of earned surplus. The trial court held in effect that the sums represented by the cash advanced and equipment furnished were loans to the mutual repayable only out of earned surplus, and that as there was no earned surplus at the time of the conversion to a stock insurer the advances were uncollectible from the mutual and did not automatically become a liability of the stock insurer.

Defendant Bullard testified that the original contributions by the partnership found their way into the books of the mutual as contributed surplus "on the understanding that at such time that the mutual corporation became a stock corporation that that would then be issued back to the Licoa Agency for stock." This can only mean that the advances were not loans but were in effect stock subscriptions. As there was only one

---

12. Cf. Ohio Farmers Indemnity Co. v. Commissioner of Internal Revenue, 6 Cir., 108 F.2d 665, 667; Hutchins Mut. Ins. Co. of District of Columbia v. Hazen, 70 App.D.C. 174, 105 F.2d 53, 57.

13. Utah C.A.1953, § 31-9-32 provides: "No domestic insurer shall hereafter be converted, changed, or reorganized as a stock corporation, unless a pro rata offering of all the capital stock is made to all the members of the insurer, and unless such conversion, change or reorganization is approved at a meeting of the members duly called for that purpose." In the instant case there is no claim of noncompliance with the statute.

14. News Pub. Co. v. Blair, 58 App.D.C. 295, 29 F.2d 955, 957; Wright v. Barnard, D.C., 248 F. 756, 775; Polk v. Mutual Reserve Fund Life Ass'n, C.C., 137 F. 273, 277; 18 C.J.S. Corporations § 84, p. 485.

15. 44 C.J.S. Insurance § 106, pp. 650–651; Fletcher, Cyclopedia of the Law of Private Corporations, Vol. 7, § 3729, p. 907; Burns v. Western Protective Ins. Co., 222 Mo.App. 1044, 9 S.W.2d 676; Citizens Mut. Fire & Lightning Ins. Soc. v. Schoen, Mo.App., 105 S.W. 2d 43.

16. Utah C.A.1953, §§ 31-9-29 and 31-9-30.

entity, the acceptance of the benefit of these advances carried with it the obligation to issue stock therefor at such time as the corporation was in a position to take such action. To the extent that stock was issued with a market value not exceeding the value of the cash advanced and the equipment furnished it was paid for by the partnership.

The situation is different as to the $12,267 claimed by the partnership under the arrangement for overriding commissions. Utah law provides that an insurer shall not pay to any person who has the power to decide which insurance applications shall be accepted or rejected any compensation related to income upon such risks except upon the net profits therefrom.[17] This provision was violated by an agreement to pay the partnership overriding commissions on all insurance written because members of the partnership were the officers and directors of the company and had the power to accept or reject risks. Their self-interest in the partnership might well impair the ability of those officers, who were partnership members, to distinguish between good and bad risks. The statute may not be avoided by the device of a partnership. It follows that there was a failure of consideration for the stock to the extent that the value of the issued shares at $20 per share exceeded the amount of the cash advanced plus the value of the furniture and equipment.

The Licoa group strenuously contends that the market value of the stock was not $20 per share. On the basis of the meager evidence of value the court found that the market value was $20 per share. This finding is sustained by evidence of some sales of stock at this figure at about the same time as, and after, the stock issuance. Also it is supported by the fact that the members of the Licoa group themselves fixed this as the value of the shares. In these circumstances it cannot be said that the finding by the trial court of the market value is clearly erroneous.

The query remains as to individual liability for the balance due on the stock. The theory of liability because of breach of a fiduciary duty absolves defendant Rich because he was neither an officer nor a director at the time of the stock issuance. The theory of quasi contract imposes such liability because as a member of the Licoa partnership Rich received the benefit of the stock issued to that partnership. A careful consideration of the confused record presented to us and of the involved reasoning of counsel leads us to the conclusion that in this case the correct theory of liability for the partial failure of consideration is that of quasi contract. To prevent their unjust enrichment the partners must make good the partial failure of consideration. They are jointly and severally liable therefor because they failed to comply with the Utah limited partnership act,[18] and hence are liable as general partners under Utah C.A. 1953, § 48–1–12.

Two defendant members of the partnership assert that by reason of circumstances affecting them they are not liable. Rich bases his contention on the fact that he resigned his office and directorship in the company in September, 1953, and was not a party to the authorization of the stock issuance in 1954. His position would be well taken if liability were imposed on the ground that the defendant members of the Licoa group had breached a fiduciary duty. We have rejected that theory. As a member of the partnership which received the stock, Rich shares in the partnership liability.

Defendant Pugsley asserts the defense of res adjudicata and obtained a summary judgment in his favor. The basis of his defense is a judgment of dismissal entered on stipulation of counsel by a Utah court on March 7, 1957, dismissing an action brought by Pugsley against the company to recover unpaid director's fees. The judgment stated that the action, "together with any possible counterclaims relating thereto," was

17. Utah C.A.1953, § 31–7–10.

18. Utah C.A.1953, § 48–2–2.

dismissed with prejudice. The claim here asserted against Pugsley was one which could have been raised by the company as a counterclaim in the state court suit. This is not questioned by the plaintiff. Instead he urges that the company had no right to make the stipulation upon which the judgment was entered without the approval of the stockholders and such approval was never obtained. The point is of no avail as the state court unquestionably had jurisdiction of the parties and of the subject matter and had power to enter the judgment which it did.[19] A judgment of dismissal pursuant to a stipulated settlement is ordinarily a judgment on the merits barring another action for the same cause.[20] No suggestion is made of fraud or collusion. Whatever claim there may be of lack of corporate power in the absence of stockholder action should be addressed to the Utah court. At the most it is a collateral attack on the judgment which may not be made here.

Defendants Bullard, Wright, Wirthlin and Rich are jointly and severally liable for the difference between $40,000, the value of the 2,000 shares of stock issued to the partnership at $20 per share, and that sum which represents the cash advanced plus the value of the furniture and equipment furnished.[21] Interest should be allowed and computed on the basis that the stock for which there was a failure of consideration was the last stock issued to the partnership. Thus there will be interest on part of the recovery from April 11, 1954, and on the remainder from August 24, 1954.

In No. 5914 the judgment is affirmed. In Nos. 5977 and 6000 the judgment is reversed for the entry of a new judgment in conformity with the views expressed herein.

19. Daniels v. Thomas, 10 Cir., 225 F.2d 795, 797–798, certiorari denied 350 U.S. 932, 76 S.Ct. 303, 100 L.Ed. 815.

20. 50 C.J.S. Judgments § 634, p. 68; 17 Am.Jur., Dismissal, Discontinuance and Nonsuit, § 91, p. 162. Cf. National Life & Accident Ins. Co. v. Parkinson, 10 Cir., 136 F.2d 506, applying Oklahoma

law. There appear to be no Utah decisions on this point.

21. The record establishes that the furniture and equipment had a fair value of $4,145 but we cannot ascertain the exact amount of cash advanced because the body of the stipulation of facts fixes this at $23,818.18 and an attached exhibit states the amount to be $23,888.17.