PRODUCTION HOUSE LIMITED PARTNERSHIP C-23, GARY O. EVERETT, TAX MATTERS PARTNER AND SANDRA B. EVERETT, A PARTNER OTHER THAN THE TAX MATTERS PARTNER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Production House Ltd. Partnership v. Commissioner
Docket No. 28874-89
United States Tax Court
T.C. Memo 1992-304; 1992 Tax Ct. Memo LEXIS 327; 63 T.C.M. (CCH) 3066; May 27, 1992, Filed *327 Decision will be entered for respondent. Gary O. Everett, pro se. Clement Shugerman, for respondent. WELLS
WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION WELLS, Judge: The instant case is a proceeding under section 6226, Internal Revenue Code, for the readjustment of partnership items of Production House Limited Partnership C-23 (the partnership) for the taxable year ended December 31, 1984. The Notice of Final Partnership Administrative Adjustments (FPAA) issued by respondent in the instant case disallowed $ 43,300 of losses and $ 3,000 of investment tax credit claimed by the partnership in connection with a video store located at the Chanute, Illinois, Air Force Base. The issues presented for decision are: (1) Whether Gary O. Everett is the tax matters partner (TMP) for the partnership; and (2) whether the partnership is entitled to the deductions and credits claimed with respect to such video store business. Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts and certain documents have been stipulated *328 for trial pursuant to Rule 91. The stipulations of fact are incorporated herein by reference, irrespective of any restatement below. At the time the petition in the instant case was filed, Mr. Everett resided in Vienna, Virginia. At the time the petition in the instant case was filed, the partnership had dissolved due to the bankruptcy of two of the general partners. [1]
The partnership was formed in 1984 to do business in Utah. The partnership formed part of a plan to acquire the assets of and operate video rental stores on military bases in the United States. The video store with which the partnership was concerned was located at Chanute Air Force Base in Illinois (the Chanute video store). The promoters of the plan were Phillip Rennert and Production House Video Corporation (PHVC). On September 5, 1984, Adventureland Video, Inc. (Adventureland) was awarded a contract *329 to conduct a video rental business at Chanute by the Army and Air Force Exchange Service (AAFES). Adventureland was engaged in the business of owning, operating, and franchising video rental stores. The contract provided that Adventureland was to furnish the inventory of videotapes, videocassette players, and videotape cameras to be offered for rental, as well as certain equipment, such as cash registers, display cases, and racks. The contract also provided that Adventureland could not subcontract any part of the work to be performed under the contract without the written consent of AAFES, nor could Adventureland assign its rights or delegate its responsibilities under the contract without the prior written consent of AAFES. Prior to the award, Adventureland and Business Concepts, Inc. (BCI) had formed a joint venture called Adventure World Video to exploit the video rental market on military bases. BCI was to provide day-to-day management for the stores, while Adventureland was to equip the stores and provide the funds to establish them. Adventureworld, Inc., an affiliate of Adventureland (Adventureworld), was to raise the needed capital, and Adventureland transferred its interest *330 in the joint venture to such affiliate. Adventureworld contracted with Mr. Rennert, whose business was partnership syndications and financing, to raise capital from investors for the stores. An initial contract was made on September 26, 1984, but, because Mr. Rennert defaulted on the contract, it was canceled. A second contract was made November 19, 1984, under which Adventureworld agreed to transfer to PHVC video store assets subject to the joint venture agreement with BCI in exchange for payments equal to the value of such assets. Mr. Rennert guaranteed PHVC's obligations under the contract. Payment was to be made as follows: $ 50,000 payable on November 19, 1984, at least $ 200,000 payable by December 19, 1984, a second such payment by January 9, 1985, and the balance by January 30, 1985. Adventureworld retained a security interest in and title to the assets until payment was made. Upon the making of the first $ 200,000 payment, assets of such value were to be released to PHVC, and Adventureworld would convey all right, title, and interest in such assets by bill of sale to PHVC. Mr. Rennert was to designate which stores were to be released. By bill of sale dated January *331 14, 1985, Adventureworld transferred the assets of eight video stores, including the Chanute video store, to PHVC. No transfer of personal property or inventory assets occurred prior to such date. BCI did not initially consent to the transfer of the joint venture's video store assets to PHVC, but BCI was willing to do so upon receipt of fees due BCI under the joint venture agreement. On January 16, 1985, BCI consented to the transfer of the eight stores covered by the bill of sale, contingent on its receipt of $ 32,000, covering the set-up fees for such stores. Additionally, PHVC and BCI formed a joint venture on December 31, 1984, to operate the video stores acquired from Adventureworld and to seek more military video store contracts. PHVC and Mr. Rennert subsequently defaulted on the November 19, 1984, agreement, and the contract was terminated March 20, 1985. Mr. Everett first learned of the video store transaction in October 1984, when he was contacted by Jay Anderson, who was the agent of the promoters. Mr. Everett previously had purchased an oil and gas limited partnership from Mr. Anderson. Mr. Everett neither met with any of the principals involved in promoting the *332 partnerships, nor met with anyone involved with the operation of the video stores. Mr. Everett received an offering memorandum describing the transaction, which stated that, when he invested, a partnership would be formed to hold the assets of a video rental store. The offering memorandum stated that Mr. Rennert and PHVC were to receive approximately 20 percent of the total proceeds in fees, which, for a store such as the one at Chanute, were estimated to be about $ 4,800. The offering memorandum contains a lengthy discussion of the tax aspects of the transaction. The offering memorandum also indicated that Mr. Everett would make a first year profit of $ 17,356. Mr. Everett consulted with an accountant who had no experience in the video rental business about the proposed transaction and visited a video rental store on a military base near his home. Mr. Everett sent the promoters a check dated December 19, 1984, for $ 5,250, along with a signed promissory note which left blank the principal amount, interest rate, and repayment schedule. Mr. Everett did not intend that such note would be paid by him and no effort to collect on the note has occurred. Mr. Everett contributed all *333 of the partnership's capital. Mr. Everett received a 99 percent interest in the partnership, while the other partners, Mr. Rennert and PHVC, each had a 1/2 percent interest. Mr. Everett never received a partnership agreement signed by all the partners. Mr. Everett did not keep copies of the transaction documents he signed for his files. The offering memorandum stated that the partnership was to be a limited partnership, but a certificate of limited partnership was never filed with the proper Utah government agency. Mr. Everett neither attempted to confirm that the partnership ever acquired the assets of the Chanute video store nor visited such store. The partnership filed a Form 1065 for its 1984 taxable year which claimed a loss of $ 43,300 from an excess of expenses over revenues, and claimed an investment tax credit of $ 3,300. Expenses deducted included a loss from sale of inventory, wages, taxes, depreciation, and miscellaneous fees. The partnership did not designate a TMP in its return. During 1985, Mr. Everett became aware that the venture was experiencing serious difficulties with BCI, the operator of the video stores, and that a lawsuit would have to be filed in *334 order to obtain income from the stores. Mr. Rennert and PHVC declared bankruptcy on April 1, 1986. Lyle Mortensen, PHVC's accountant, and Jay Anderson, a director of PHVC, also filed for bankruptcy. By mutual agreement, Adventureland and AAFES terminated Adventureland's contract to operate the Chanute video store effective March 31, 1986. OPINION The first issue we must consider is whether Gary O. Everett is the TMP of the partnership. Respondent contends that Mr. Everett is the TMP of the partnership as provided by section 6231(a)(7)(B). Mr. Everett contends that he is a limited partner of the partnership and, therefore, he cannot qualify as a TMP under such provision. After due consideration, we conclude that Mr. Everett is the TMP. Mr. Everett is the only one of the three partners in the partnership eligible to be the TMP. The other two partners, Mr. Rennert and PHVC, went into bankruptcy proceedings and are therefore ineligible to be TMP's. Computer Programs Lambda, Ltd. v. Commissioner, 89 T.C. 198, 203-206 (1987); sec. 301.6231(a)(7)-1T(1)(4), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6792 (Mar. 5, 1987). Section 6231(a)(7)(B) *335 provides that, where a TMP is not designated under the procedures set forth in the regulations, which is the circumstance of the instant case, the TMP is the "general partner having the largest profits interest at the close of the taxable year involved". At the relevant time, Mr. Everett held a 99 percent profits interest in the partnership. Mr. Everett, however, contends that he is a limited partner, not a general partner, and he therefore cannot be the TMP under such provision. Inasmuch as we hold below that the partnership is a general partnership and not a limited partnership, we need not consider whether section 6231(a)(7)(B) prohibits Mr. Everett from being the TMP of the partnership for purposes of the instant case. The question of whether Mr. Everett is a general or limited partner is a matter of State law. In general, State law determines the legal relationships between persons, while Federal law determines the tax consequences of such relationships. See Baker Commodities, Inc. v. Commissioner, 415 F.2d 519, 525 (9th Cir. 1969), affg. 48 T.C. 374 (1967); Boyter v. Commissioner, 74 T.C. 989, 994 (1980), remanded *336 on another issue 668 F.2d 1382 (4th Cir. 1981); Eccles v. Commissioner, 19 T.C. 1049, 1051, affd. 208 F.2d 796 (4th Cir. 1953). The partnership was formed under the law of the State of Utah. Consequently, we will consider Utah law to decide Mr. Everett's status. Section 48-2a-201, Utah Code Annotated (1992 Repl. Volume), provides that, to create a limited partnership, a certificate of limited partnership must be filed with the Division of Corporations and Commercial Code of the Utah Department of Commerce. No such certificate ever was filed on behalf of the partnership. There is no evidence that a limited partnership was formally created. Accordingly, the partnership is not a limited partnership under Utah law, and Mr. Everett is a general partner of the partnership. Bergeson v. Life Insurance Corp. of America, 265 F.2d 227, 235 (10th Cir. 1959); Mud Control Labs v. Covey, 269 P.2d 854, 859 (Utah 1954). Mr. Everett makes a number of arguments concerning his status; however, we do not find them persuasive. Mr. Everett seems to contend that the offering memorandum provided him by the *337 promoters constituted a limited partnership agreement. That, however, is not the case. The offering memorandum repeatedly refers to limited partnerships which are to be formed in the future; clearly, the offering memorandum does not operate to create any type of partnership entity; it merely describes the contemplated transaction. The offering memorandum clearly states that the partnership will be formed after the investor makes his payment. The offering memorandum also refers to a master partnership agreement attached as an appendix to such memorandum. No partnership agreement for the partnership, however, was offered or received in evidence. Mr. Everett also contends that he should be treated as a limited partner because he entered into the transaction intending to be treated as a limited partner and because the offering memorandum stated that he would be a limited partner. Mr. Everett's subjective intent, however, is not determinative of his status as a general or limited partner of the partnership. Mr. Everett cites Rond v. Yeaman-Yordan-Hale Productions, 681 P.2d 1240 (Utah 1984), for the proposition that a limited partnership can exist without the *338 necessity of filing a certificate. That case is distinguishable as it only concerns the dealings of the partners among themselves, not with third parties, as in the instant case. The Supreme Court of Utah has stated: It is elemental that when a partnership is created, an agreement between its partners limiting liability is not binding on third parties. Were it otherwise, partners could, by private agreement between themselves, obtain the advantages of limited partnership without complying with the statutory requirements. [Mud Control Labs v. Covey, supra at 859; fn. ref. omitted.]
Mr. Everett points to the fact that the partnership's Form 1065 filed for the 1984 taxable year stated that it was a limited partnership. While such statement in the return may be evidence of intent, intent alone does not control tax consequences, rather, what is actually done is determinative. Carlton v. United States, 385 F.2d 238, 243 (5th Cir. 1967). Such statements in the return simply reflect the taxpayer's claim and do not establish the truth of the matters set forth therein. Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); *339 Roberts v. Commissioner, 62 T.C. 834, 837 (1974); Halle v. Commissioner, 7 T.C. 245, 247-248 (1946), affd. 175 F.2d 500 (2d Cir. 1949). Mr. Everett's contention that he does not consider himself the TMP is merely his subjective belief and cannot overcome the objective indicators of his status. Accordingly, we hold that Mr. Everett is the TMP of the partnership under section 6231(a)(7)(B) and is properly before us as the TMP of the partnership. Hereinafter, we refer to Mr. Everett in his status as TMP as petitioner. We turn next to respondent's disallowance of the deductions and investment tax credit claimed by the partnership on its 1984 return. Petitioner has the burden of proving the incorrectness of each of the determinations made in the FPAA. Rule 142(a). We note that petitioner has experienced difficulty in preparing his case and that petitioner has had to obtain almost all of the evidence concerning the instant case from respondent or the AAFES. Furthermore, the promoters of the partnership have gone into bankruptcy. While we sympathize with petitioner's plight, such burdens do not alter the rules regarding the *340 burden of proof. Moreover, deductions and credits are matters of legislative grace, and taxpayers seeking the benefit of them must establish that the conditions which Congress has seen fit to impose on such deductions and credits have been fully satisfied. Deputy v. DuPont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Wisely v. United States, 893 F.2d 660, 666 (4th Cir. 1990); Segel v. Commissioner, 89 T.C. 816, 842 (1987). Petitioner has also complained about the manner in which respondent has conducted the audit of the partnership's return. A trial in this Court, however, is a proceeding de novo, and, generally, we do not look behind the notice of deficiency to inquire into the manner in which respondent arrived at the determinations made in the notice of deficiency. Capitol Federal Savings & Loan Association v. Commissioner, 96 T.C. 204, 214 (1991). After due consideration, we find that petitioner has failed to establish that the partnership is entitled to claim the deductions and credit disallowed by respondent. The losses claimed *341 on the partnership's tax return for taxable year 1984 arose from the deduction of expenses in excess of income claimed in connection with the operation of the Chanute video store. Respondent contends that the partnership is not entitled to such losses because the partnership neither acquired the assets of the Chanute video store during 1984 nor engaged in the business of operating such store. On its return of income for taxable year 1984, the partnership claimed losses from sale of inventory, expenses for wages, taxes, and depreciation connected with such store, and an investment tax credit. To be entitled to claim depreciation deductions or investment tax credits with respect to depreciable property, a taxpayer must have an investment or interest in the property. Law v. Commissioner, 86 T.C. 1065 (1986); Tolwinsky v. Commissioner, 86 T.C. 1009, 1063-1065 (1986); Leslie Leasing Co. v. Commissioner, 80 T.C. 411, 419 (1983); Hunter v. Commissioner, 46 T.C. 477, 489-490 (1966). [2] Furthermore, to be entitled to depreciation or investment tax credit, the property must be held for use in the taxpayer's *342 business or for the production of income. Pike v. Commissioner, 78 T.C. 822, 841-843 (1982), affd. without published opinion 732 F.2d 164 (9th Cir. 1984). Whether or not such investment or interest exists depends upon whether the taxpayer has assumed the benefits and burdens of ownership of such property. Larsen v. Commissioner, 89 T.C. 1229, 1267-1269 (1987), affd. in part and revd. in part sub nom. Casebeer v. Commissioner, 909 F.2d 1360 (9th Cir. 1990); Estate of Thomas v. Commissioner, 84 T.C. 412, 431-436 (1985). Such issue is a question of fact. Grodt & McKay Realty, Inc. v. Commissioner, 77 T.C. 1221, 1237 (1981). In the instant case, petitioner has not established that the *343 partnership possessed any of the benefits and burdens of ownership or made any investment in the assets of the Chanute video store during the taxable year in issue. Initially, title to the store assets was held by Adventureworld, which conveyed the store to PHVC on January 14, 1985. There is no evidence in the record, however, that PHVC or the PHVC/BCI joint venture subsequently transferred the assets to the partnership or that the partnership ever acquired any of the store's assets. Indeed, since PHVC itself did not acquire the assets until 1985, it does not appear that the partnership could have received them in time to support tax benefits claimed in 1984. Consequently, respondent's disallowance of the deductions claimed by the partnership for losses on sales of inventory, depreciation, taxes on assets, as well as the investment tax credit, is sustained. Other deductions were claimed with respect to expenses incurred in the operation of the video store business in 1984. To be deductible, such expenses must have been incurred in the course of the partnership's trade or business. Sec. 162(a); Richmond Television Corp. v. United States, 345 F.2d 901, 907 (4th Cir. 1965), *344 vacated and remanded on another issue per curiam 382 U.S. 68 (1965); Mayrath v. Commissioner, 41 T.C. 582, 589 (1964), affd. 357 F.2d 209 (5th Cir. 1966); Koons v. Commissioner, 35 T.C. 1092, 1101 (1961). The trade or business of the partners is not attributed to the partnership; rather, the partnership is treated as an entity separate from its partners in deciding whether it is engaged in a trade or business. Madison Gas & Electric Co. v. Commissioner, 633 F.2d 512, 517 (7th Cir. 1980), affg. 72 T.C. 521 (1979). No deduction is allowable for expenses incurred in the business of an entity separate from the partnership, even if such expenses were paid by the partnership. Interstate Transit Lines v. Commissioner, 319 U.S. 590 (1943). The question of whether a taxpayer is engaged in a trade or business is one of fact. Higgins v. Commissioner, 312 U.S. 212, 217 (1941). The record in the instant case does not establish that the partnership engaged in any trade or business during the year in issue. Adventureland held the contract with *345 AAFES to operate the Chanute video store. The contract provided a procedure to follow in assigning Adventureland's rights and duties connected with operating the Chanute video store. There is no evidence which suggests that Adventureland ever assigned any of its rights under the contract pursuant to such procedure to Mr. Rennert, Adventureworld Video, PHVC, or the partnership. There is nothing in the record which indicates that the partnership was carrying on a business or was in any way involved in the operation of the Chanute video store in 1984. Rather, it appears to us that Adventureworld Video, through BCI, operated the store during taxable year 1984, even though such operation had not been approved by AAFES. Consequently, the partnership was not in the business of operating the Chanute video store during taxable year 1984. Furthermore, it appears that the partnership did not possess sufficient capital to pay the expenses connected with the operation of such store. The partnership's return of income for taxable year 1984 stated that expenses of the store exceeded its receipts by $ 43,300. The only capital contribution to the partnership came from Mr. Everett, and it consisted *346 of a check for $ 5,250, most of which apparently went to the promoters as a selling commission. The "promissory note" signed by Mr. Everett was bogus and did not create genuine indebtedness. Mr. Everett signed the note in blank, leaving the promoters to fill in the principal amount, the interest rate, and the amount of installment payments. The parties to the note never intended that Mr. Everett would pay it, and no payments were made on such note. Under such circumstances, the promissory note cannot be regarded as creating genuine indebtedness. Patin v. Commissioner, 88 T.C. 1086, 1122-1124 (1988), affd. without published opinion sub nom. Hatheway v. Commissioner, 856 F.2d 186 (4th Cir. 1987), affd. sub nom. Gomberg v. Commissioner, 868 F.2d 865 (6th Cir. 1989), affd. sub nom. Skeen v. Commissioner, 864 F.2d 93 (9th Cir. 1989). Consequently, we conclude that the partnership did not pay any expenses of operating the video store during taxable year 1984. Accordingly, we hold that the partnership is not entitled to claim any deductions on account of the video store for 1984. The evidence in the instant *347 case leads to the conclusion that the transaction involving the partnership and the Chanute video store was a factual sham and that the deductions and credits claimed by the partnership were premised upon events that never took place. Freytag v. Commissioner, 89 T.C. 849, 876-877 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. on another issue 501 U.S.    , 111 S. Ct. 2631 (1991). No transfer of the assets of the video store to the partnership occurred, and the partnership did not engage in any business during the year in issue. Accordingly, we hold that the purported transactions involving the partnership and the Chanute video store are to be disregarded for tax purposes. To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. Under Utah Code Ann. sec. 48-1-28(5)↩ (1992), a partnership dissolves by operation of law when one or more of its partners declares bankruptcy.
2. Weiler v. Commissioner, T.C. Memo. 1990-562; Batastini v. Commissioner, T.C. Memo. 1987-378; Niagara County Savings Bank v. Commissioner, T.C. Memo. 1984-247↩.